[No. 1614.]

## THE RENO MILL AND LUMBER COMPANY, A COR-PORATION, APPELLANT, *v.* W. J. WESTERFIELD, RESPONDENT.

EVIDENCE—ADMISSIBILITY—WITNESSES—JUDGE AS WITNESS—REFUSAL TO TES-TIFY — IMPEACHMENT — FOUNDATION — APPEAL — NEW TRIAL — QUESTIONS CONSIDERED. 1. Where no foundation is laid for the impeachment of a witness by asking him if he has not made certain contradictory statements, and calling his attention to the place where, the time when, and the persons to whom or in whose presence he made such state-ments, it is not error for the judge, by whose testimony it is sought to prove such contradictory statements, to refuse to testify.

2. Where the trial court considered only one question in ordering new trial, the supreme court on an appeal from the order will not pass on mat-ters alleged in the motion but not considered by the trial court. (FITZGERALD, J., dissenting.)

### ON REHEARING.

NEW TRIAL—ORDER—APPEAL—REVIEW. 1. An order merely directing a new trial because defendant was deprived of the testimony of a certain wit-ness does not affirmatively show it was made on one ground only.

2. A motion for new trial being made on several grounds—one of them insufficiency of evidence—and the evidence being conflicting, so as to authorize the granting of new trial on that ground without abuse of discretion, order granting new trial for the stated reason that defend-ant was deprived of the testimony of a certain witness will be sus-tained, though such witness properly refused to testify.

APPEAL from the Second Judicial District Court, Washoe County; *B. F. Curler* and *G. F. Talbot*, Judges.

Action by the Reno Mill and Lumber Company against W. J. Westerfield. Judgment was rendered in favor of plain-tiff, and from an order granting a new trial, the plaintiff appeals. **Reversed.** On rehearing, **affirmed.**

The facts sufficiently appear in the opinion.

*A. E. Cheney*, for Appellant:

I. According to Westerfield's contention, his liability is to Holesworth and his promise to the plaintiff was not a promise to pay Holesworth's indebtedness, but a promise to pay to the plaintiff his own indebtedness to Holesworth. Such a promise is not within the statute of frauds. (Browne on the Statute of Frauds, 5th ed., sec. 164.)

II. Gulling testifies that Westerfield said: "I will not have the money until October, and I will pay then." The com-pany waited until October. This promise fixed his liability.

It supports and justifies the verdict. In the face of this express promise to pay a just debt, all questions concerning the admission or rejection of testimony relating to whether there was a contract are wholly immaterial. He is liable on that promise alone. That is the controlling fact. (*Quinn* v. *White*, 26 Nev. 42, *ante*.)

III. No question was made of the sufficiency of the pleadings to hear all the proof, and no question was made on the trial as to any variance between the pleadings and the proof, and no such question can be raised in this court. (*Bank* v. *Wills*, 23 Nev. 59.)

IV. It is the duty of litigants to be active and diligent in procuring the testimony upon which they rely to maintain their cause. Trials are not to be encouraged as experiments. (*Pinschower* v. *Hanks*, 18 Nev. 106; *Howard* v. *Winters*, 3 Nev. 542.)

V. A new trial cannot be granted upon the ground of newly discovered evidence because there is no competent proof of what that evidence is. The moving party must present the affidavit of the new witness as to what he will testify, and the affidavit of a party or another person, as to what they are informed his testimony will be, is insufficient. (*Dunbar* v. *Hollinshead*, 10 Wis. 508; *Jenny Lind Co.* v. *Bower*, 11 Cal. 194; *Arnold* v. *Skaggs*, 35 Cal. 684-7-8; Hayne on New Trial and Appeal, sec. 93; 14 Enc. Pl. &. Pr. 826.)

VI. "If the acts of surprise occurred during the trial, it is the duty of the aggrieved party to call the court's attention to his misfortune at the earliest possible moment by a motion for a continuance, supported by the usual affidavits." (14 Enc. Pl. & Pr. 749, and cases cited.)

VII. Even if ordinary prudence could not have prevented the surprise, a new trial will not be granted unless it appears: First, that the judgment is erroneous; second, that the applicant has a good defense; third, that the evidence he can produce on a new trial will probably change the result. (14 Enc. Pl. & Pr. 746, and cases cited.)

*F. H. Norcross*, for Respondent:

I. The question whether there was, or was not, an oral

contract between the defendant Westerfield and Holesworth for the construction of the house for an agreed price, was the only material issue in the case. If there was, in fact, such a contract, the plaintiff cannot recover from the defendant.

II. The refusal of Judge Curler to testify in the case, or to continue the trial so that his testimony could be taken before another judge and jury, was a violation of the positive provisions of our statute. (Comp. Laws, 3481.)

III. The refusal of the court to testify had taken away from the defendant the power to impeach him; this ruling certainly relieved the defendant of the necessity of doing a vain and foolish thing, as it would have been under the circumstances, to have examined Mr. Holesworth as to his conversations with Judge Curler.

IV. While it is a general rule that the testimony proposed to be produced must be sworn to by the witness, it is not in every case required. "The reason for requiring the affidavits of the new witnesses is to guard against unfounded applications, and to present the best, rather than a hearsay, evidence of what such witnesses will relate." (*Caldwell v. Dickenson*, 29 Mo. 227; 14 Enc. Pl. & Pr. 826.)

V. "A *nisi prius* judge has jurisdiction on motion for new trial to decide, as a question of fact, whether the scale of evidence against a verdict preponderates over that in favor of it; and his decision setting it aside will not be reversed by the appellate court except for the more cogent reasons, such as conclusive preponderance of evidence in favor of the verdict." (*Phillpotts v. Blasdel*, 8 Nev. 61.)

VI. "All points which could be urged in the court below on a motion for a new trial, either for or against it, may be raised on appeal from the order granting or refusing it," and where the lower court has granted a new trial the appellate court will not reverse such order if any of the grounds assigned in support of a new trial are sufficient. (*McWilliams v. Herschman*, 5 Nev. 263; *McLeod v. Lee*, 14 Nev. 398.)

VII. "The trial court's decision will always be presumed to have been in accordance with the justice and merits of the case, unless the contrary plainly appears from the record." (16 Am. & Eng. Enc. Law, 692.)

VIII.  "Where the order granting a new trial is general in its terms, not specifying the grounds upon which it is based, an expression of opinion by the trial court of a particular error will not limit the review to that ground." (*People* v. *Flood*, 102 Cal. 330.  See, also, *Kauffman* v. *Mayer*, 94 Cal. 269, 277; *Shankin* v. *Hall*, 100 Cal. 26–8; *Mills* v. *Oregon Railway Co.*, 102 Cal. 357; *Galvin* v. *Palmer*, 113 Cal. 46; *Nally* v. *McDonald*, 77 Cal. 284.)

## ON PETITION FOR REHEARING.

I.   The statute, having provided the grounds upon which a new trial may be granted, gives the moving party, who has complied with the statute, the right to decision upon every statutory ground which he has properly raised, and where a number of grounds have been raised which were not passed upon by the lower court, and this court holds that it cannot consider those grounds, for the reason that they have not been passed upon in the first instance by the trial court, the case must be sent back to the court below with the specific direction to pass upon all the points undisposed of and necessary to a complete determination of the motion.

II.   The motion for a new trial in this case was made upon several grounds and the statement contains sixteen assignments of error, only one of which has been passed upon by the trial court or by this court.   The order of the lower court was reversed, because the point upon which it granted a new trial is held to be erroneously decided, and this court has refused to pass upon the other grounds upon which the motion for new trial was made, for the reason that they were not considered by the trial court.

III.   No objection having been made at the time the judge was called as a witness that his testimony, in the event he should testify, would be inadmissible because it was for the purpose of impeachment and the proper foundation had not been laid, that question was not involved in the decision of the trial court, and, hence, cannot be considered on the appeal. (*McGurn* v. *McInnis*, 24 Nev. 373; *Paul* v. *Oragnaz*, 25 Nev. 311; Hayne on New Trial & Appeal, secs. 103, 280–3–4; 36 Cal. 510.)

IV.   "The failure to lay a foundation for impeachment

may be waived by failing to make objection in proper form."
(Jones on Evidence, sec. 849, p. 1868, and n. 12; *Com.* v.
*Smith*, (Mass.) 40 N. E. 189.)

V. This court, in its majority opinion, after citing Hayne
on New Trial & Appeal, sec. 284, as its authority, answers
the question as follows: "We concur in this reasoning, and
think we should restrict our view to the ground upon which
the order was made." After a very careful examination and
consideration of the authority upon which the majority of
this court have based their conclusion and decision, we are
constrained to urge upon the consideration of this court that
its decision has gone farther than the authority it has cited
goes, and that the learned text writer, in considering the
point in question, did not go so far as to hold that all points
not considered by the trial court could not be passed upon by
the appellate court, but only those points which involved
discretion.

VI. Every litigant who moves for a new trial is entitled,
as a matter of undeniable right, to have every point which
he has properly raised, considered and disposed of. (*Shanklin*
v. *Hall*, 100 Cal. 26; *Kauffman* v. *Maier*, 94 Cal. 276; *Nailly*
v. *McDonald*, 77 Cal. 284; *Bank* v. *Armstrong*, 92 Mo. 265;
*Hewett* v. *Steele*, 118 Mo. 463; *Bradley* v. *Reppelle*, 133 Mo.
545; 2 Enc. Pl. & Pr., p. 372, and authorities cited in notes;
12 Enc. Pl. & Pr., p. 975, and authorities cited in notes;
Hayne on New Trial & Appeal, sec. 2842, *a* and *b*.)

By the Court, BELKNAP, J.:

This action was brought to recover the value of building
material furnished defendant and used in the construction of
his house, and for which he promised to pay its reasonable
value. The answer denied that the material was furnished
defendant, or that he promised to pay therefor, and alleged
that it was sold to one Holesworth. Judgment was rendered
for $1,114.04. The district court granted a new trial upon
the ground of error in the refusal of the district judge to
testify. The appeal is taken from this order.

During the progress of the trial and some time after the
closing of plaintiff's case, the court allowed respondent to
recall Mr. Holesworth for further cross-examination for the

purpose of laying a foundation for impeachment. In the meantime, and before the witness had been recalled, the judge presiding at the trial, and by whose testimony Holesworth was sought to be impeached, after argument of counsel and due consideration, refused to be sworn and testify. Holesworth was recalled, but counsel declined to further cross-examine, and no foundation was laid for the impeaching evidence.

The necessity of laying the foundation for an impeachment and the reason upon which it is founded were ably considered in the case of *Mattox* v. *U. S.*, 156 U. S. 237.

The court said: "The authorities, except in some of the New England states, are almost unanimous to the effect that, before a witness can be impeached by proof that he has made statements contradictory or differing from the testimony given by him upon the stand, a foundation must be laid by interrogating the witness himself as to whether he has ever made such statements. Justice to the witness himself requires not only that he should be asked whether he had ever made such statements, but his attention should be called to the particular statement proposed to be proven, and he should be asked whether, at such a time and place, he made that statement to the witness whose testimony is about to be introduced. This method of impeachment was approved by this court in *Conrad* v. *Griffey*, 16 How. 46, wherein the rule is stated to be 'founded upon common sense, and is essential to protect the character of a witness. His memory is refreshed by the necessary inquiries, which enable him to explain the statements referred to, and show that they were made under a mistake, or that there was no discrepancy between them and his testimony.' "

Of the rule as above announced Professor Greenleaf says: "This course of proceeding is considered indispensable from a sense of justice to the witness, for, as the direct tendency of the evidence is to impeach his veracity, common justice requires that, by first calling his attention to the subject, he should have an opportunity to recollect the facts, and, if necessary, to correct the statement already proven, as well as by a reexamination to explain the nature, circumstances,

meaning, and design of what he is proven elsewhere to have said." (Greenl. Ev. 462.)

In *Runyan* v. *Price*, 15 Ohio St. 1, one of the subscribing witnesses to a will had died. The contestants offered in evidence his declarations respecting the capacity of the testator to make a will at the time the one in question purported to have been made for the purpose of impeaching his testimony.

"It seems to me," said the court, "that to allow the death of the witness to work an exception would be to destroy the principles upon which the rule rests, and deny the protection which it was designed to afford. * * * In relieving one party of a supposed hardship, an equally serious one might be inflicted upon the other. * * * Without, therefore, the opportunity to the witness of explanation, or, to the party against whom offered, of reexamination, we are of opinion that the supposed declarations lack the elements of credibility which they should possess before they can be used legitimately to destroy the testimony of the witness."

The subject was considered by the Supreme Court of Colorado in *Ryan* v. *People*, 21 Colo. 125, in these words: "At the trial it was sought to impeach the evidence of the witness Dulin by showing that at other times, before and after his deposition was taken, he had made statements contrary to those contained in the deposition. This offer of proof on the part of the defendant was rejected by the court, for the reason that the proper foundation had not been laid for it, the attention of the witness Dulin while upon the stand not having been called to these alleged contradictory statements, and he having had no opportunity to explain or deny the same. Counsel concede the general rule to be that a witness cannot be impeached by showing that he has made statements at other times inconsistent with his testimony, unless a foundation be first laid by interrogating the witness himself as to whether or not he has made such statements. This rule is of almost universal application. It is founded upon the soundest principles, and supported by the great weight of English and American authority. The reasons given for the rule are that justice requires that the attention of the witness should be first called to the subject, in order that he may explain or deny the alleged contradictory statements,

and be given an opportunity upon 'a reexamination to explain the nature, circumstances, meaning, and design of what he is proved elsewhere to have said.' (1 Greenl. Ev., 14th ed., sec. 462.)"

In excuse of the course pursued it is said that it would have been a vain thing to have laid the foundation for an impeachment after the judge had refused to be sworn. According to the great weight of authority the rule was established for the protection of witnesses whose veracity was assailed, and its enforcement is not a matter of form, to be changed by the hardship of a particular case.

"The true principle of the rule," said the Supreme Court of Kansas, "seems to be that the witness whose testimony is to be impeached, and the party to be affected thereby, are of right entitled to any explanation which the former can give of the statements imputed to him." (*Greer* v. *Higgins*, 20 Kan. 424.)

Having reached the conclusion that it was not error, under the facts in the court below, to refuse to be sworn as a witness, counsel for respondent proceeds in his brief to the discussion of other questions made in the statement upon motion for new trial.

The record shows that the new trial was ordered "for the reason that the defendant was deprived of the testimony of Judge Curler at the former trial, and such testimony may have been material."

Both counsel concede that was the only ground considered by Judge Talbot, who heard the motion for new trial. Under these circumstances, is it our duty to consider questions raised by the statement on motion for new trial, and not considered by the judge before whom the motion was made?

"If the grounds of action of the lower court be not shown by the record," says Mr. Hayne, "the supreme court must presume in support of such action that it was upon some ground upon which it can be sustained. Thus, in *Weddle* v. *Stark*, 10 Cal. 302, where a motion for new trial was made upon two grounds—insufficiency of the evidence and errors in law—and the record did not show upon what ground the motion was granted, the supreme court affirmed the order on the ground that the evidence was conflicting, and that the

order must be deemed to have been made on that ground. * * * But it is believed that this rule should be applied only where the record shows a general order or decision of the court below, without showing any of the grounds on which it was based. Where the order expressly states that it was made on some one ground without mentioning the other grounds, it would seem that it should be construed to mean that the order was made upon that ground only, and that the other grounds were not considered."

Again: "Where the unnoticed grounds involve questions of discretion, it is believed (although no decision has been found upon the point) that the supreme court should not undertake to determine them for the first time, but, if the case cannot be disposed of upon other points, should send it back to the court below for the orderly disposition of the matter. Unless this is done, the grossest injustice may result. Suppose, for example, that a motion for new trial is made upon two grounds, viz., error in law, and insufficiency of the evidence, and that the court below erroneously grants the motion on the ground of error in law, but does not consider the other ground, and that there is a conflict of evidence. If the supreme court should undertake to pass upon the question of the insufficiency of the evidence, it would have to affirm the order on the ground that there is a conflict of evidence, and that the discretion of the court below in the matter cannot be disturbed. But in the case supposed the court below had never considered the evidence at all, and had never exercised its discretion. The only ground upon which it acted was erroneous, and its action would be set aside were it not for the fact that the supreme court, by undertaking to pass upon a question which the record shows was not passed upon by the court below, creates an obstacle to stumble over. Is it not manifest here that justice is defeated?" (Hayne, New Trial & App., sec. 284.)

We concur in this reasoning, and think we should restrict our review to the ground upon which the order was made.

The order granting respondent a new trial should be reversed, and the cause remanded.

It is so ordered.

MASSEY, C. J.; I concur.

FITZGERALD, J., dissenting:

The statute plainly gives a litigant the right to have the testimony of the trial judge in a case pending before said judge.

Comp. Laws 1900, sec. 3481, is as follows: "The judge himself, or any juror, may be called as a witness by either party; but in such case it shall be in the discretion of the court or judge to order the trial to be postponed, or suspended, and to take place before another judge or jury."

The counsel of respondent informed the court in due time that he desired to have the testimony of the trial judge in the case, and actually called said judge as a witness.

The judge refused to testify, and in refusing, among other things, said: "I believe any error, if it should be error for me to refuse at this stage of the trial, to testify as a witness —if this shall be error, it is error that can be corrected as a matter of law upon the basis of newly discovered evidence on motion for a new trial, unless the facts are such as warrant the court in saying that due diligence has not been exercised on the part of either of the parties who shall move for a new trial in the matter of getting the testimony of the judge. If I have not the right arbitrarily to refuse to be sworn and give testimony in this case, it is a matter of right that the demand of one of the parties to this case that I shall testify be respected and granted as a matter of right that will be grounds for reversal upon a matter of law; and neither party will suffer materially, the case having proceeded thus far, by going on with the case to completion, and letting the error, if any, be corrected in a statement on motion for a new trial. However, acting as the judge in this case, if I absolutely refuse to be sworn and testify, and it shall appear that this testimony was discovered too late to be used upon this trial, or that it can't be used, because, acting as judge, with the power in my own hands of refusing or consenting to be sworn, I refuse to testify; and if it could be shown that it can thereafter be produced upon a trial of the case, or would be proper to be produced thereafter—why the motion for a new trial would be granted upon that ground."

In the majority opinion it is not denied that a litigant has

the right to the testimony of the judge presiding at the trial of a cause, but it is therein said: "During the progress of the trial, and some time after the closing of the plaintiff's case, the court allowed respondent to recall Mr. Holesworth for further cross-examination for the purpose of laying a foundation for impeachment. In the meantime, and before the witness had been recalled, the judge presiding at the trial, and by whose testimony Holesworth was sought to be impeached, after argument of counsel and due consideration, refused to be sworn and testify. Holesworth was recalled, but counsel declined to further cross-examine, and no foundation was laid for the impeaching evidence."

Then, in said opinion, it is held that, because the technical foundation was not laid for the impeaching evidence, such evidence was inadmissible and immaterial.

I cannot agree to that.

See what a position that was in which respondent's counsel found himself.

The trial judge had already informed counsel that he would not testify in the case; indeed, had formally ruled that he would not testify, and to said ruling respondent took exception.

I think counsel for respondent had the right, and it was his duty, to ascertain whether he had impeaching evidence, before he attempted to lay the foundation for such evidence. Then, knowing he had no evidence with which to impeach, why should he lay or attempt to lay a foundation for an impeachment that he knew he had no evidence to make? His position was, indeed, an unhappy one. Under the view taken of the case by the majority, if he did not lay his foundation, he could not impeach; and, if he did attempt to lay said foundation, he ran a risk of great magnitude.

It was known to all that, by the refusal of the trial judge to testify, impeaching evidence could not be obtained. Under such circumstances the witness could have made such answers as he chose to the questions laying the foundation for impeachment, and counsel for respondent would have been helpless. I think no one had the right to put counsel for respondent in such a position; and that, as he could not get the impeaching testimony, and knew that he could not get it,

he was excused from attempting to make the foundation for impeachment.

Counsel for appellant could have well argued to the jury the attempted impeachment and its failure, thus prejudicing the case. "The law does not require a vain thing to be done," and to lay the foundation for an impeachment under such circumstances would have been wholly a vain thing. Respondent, under the statute, had a right to the testimony of the trial judge. Of this right he was deprived, and I think without fault of his; and therefore I think the trial court acted properly in granting a new trial.

In my judgment there is another objection to the opinion of the majority in this case.

In his motion for a new trial respondent stated several grounds therefor. The trial judge passed upon but one of those grounds, to wit, the one above discussed, and the same one decided by the majority of this court. The trial judge granted a new trial to the respondent on this ground alone, and this court, by the majority opinion, reverses the trial judge's order granting a new trial, and not in any respect passing upon the other grounds for a new trial urged by respondent. The effect of this order of reversal is to deny respondent a new trial, and the case ends adversely to him, and he can never know whether his other grounds for a new trial were good or bad. Some of the other grounds for new trial urged by respondent cannot, in my opinion, be said to be so destitute of merit as not to require consideration of both the trial court and this court. One I shall merely mention, to wit, the insufficiency of the evidence to sustain the verdict of the jury. I think the respondent was at least entitled to the judgment of the trial court on this question. He did not get it, and now, by the opinion of the majority, as it seems to me, he never can get it.

The case cited in the majority opinion is a case in which the trial court made an order granting a new trial, and the appellate court affirmed the said order, and sent the case back for new trial, thus holding that litigants had the right to have all their grounds of new trial passed upon. The contrary is the fact in this case. The trial court granted the motion for new trial, but passing on but one point, thinking that point

sufficient; and this court reverses the order of the trial court, thus denying to respondent a new trial; and, if he has not a new trial as stated above, the litigation ends adversely to him, although several of the grounds urged by him for a new trial have never been passed upon or noticed by either the trial court or the appellate court. Thus the very evil pointed out by Hayne in his work on New Trial, cited in the majority opinion, is inflicted upon the respondent.

For the foregoing reasons I dissent from the judgment of the majority in this case, and think that the order of the trial court granting a new trial should be affirmed.

## ON REHEARING.

By the Court, BELKNAP, J.:

In the opinion heretofore filed importance was attached to the statement of respective counsel that the only matter considered by the judge before whom the motion for new trial was heard and determined was the refusal of Judge Curler to be sworn as a witness.

The record does not show this fact. It is as follows: "The court now renders its decision upon defendant's motion for a new trial of this cause, and directs that a new trial of said cause be granted, for the reason that the defendant was deprived of the testimony of Judge Curler at the former trial, and such testimony may have been material." This is the record, and by it we must be governed.

It should be noticed that the above words do not exclude from consideration any ground upon which the motion was made.

In *Oullahan* v. *Starbuck*, 21 Cal. 414, a similar question arose. The court in that case said: "It is stated by appellant's counsel that the only ground upon which the court below based its action in granting a new trial was a supposed error in its refusing to allow a peremptory challenge to a juror after he had been accepted, though not sworn. We do not doubt such was the fact, but the record does not show this, and by its contents we must be governed.   *   *   *"

The question before us is the effect to be given to the terms of the order. Appellants contend that, as the order allowing a new trial was made upon one ground only, it

should be construed as overruling the motion upon the other grounds.

To this view there are two answers:

First—The record does not affirmatively show that the order was made upon one ground only, as was erroneously considered in the original opinion.

Second—Such construction would be unjust, for reasons fully stated in the case of *Kauffman* v. *Maier*, 94 Cal. 276, following, where a similar question arose: "The proposition of the appellant, that this court is limited upon this appeal to a consideration of the grounds specified in the order granting the new trial, is untenable. A party has the right to move for a new trial upon any or all of the grounds permitted by the statute, and if the record on which his motion is based discloses more than one ground for which a new trial should be granted, the court cannot, by stating in its order that the motion is granted upon one ground only, and denied upon the others, deprive the other party of the right to a review by this court of the entire record.

"The action of the court below is limited to granting or refusing a new trial, and, except in those cases in which it is justified in limiting the new trial to one or more designated issues, the effect of an order granting a new trial is to place the cause in the position it held before any trial had been had. Upon an appeal from that order, this court will review the entire record upon which the order was based, and, if there be found any error in the record which would have justified the court in making the order, the order will be affirmed, upon the same principles that an order sustaining a demurrer to a defective complaint will be sustained, even though the ground upon which the trial court sustained it may be held untenable. A motion for a new trial is a proceeding in the nature of a new action, wherein the statement or bill of exceptions corresponds to the complaint, and the specifications of error to a demurrer thereto; and the action of the trial court in sustaining the motion is to be treated on the same principles. If there be any grounds upon which its action can be upheld, the order will be sustained, irrespective of the particular ground given by that court, whether in an opinion or by a statement in the order itself.

"A contrary rule might work great injustice. If a new trial is granted, the former decision is set aside, and the party whose motion has prevailed is not 'aggrieved,' and has no ground for an appeal. By the order granting the new trial the judgment is vacated, and the cause is in the same condition as when the issues were joined. But if, upon an appeal from that order, the action by this court is limited to a review of merely the ground designated by the lower court, and that ground should be held insufficient, the moving party would be deprived of the new trial, to which the record might show that he is manifestly entitled."

The motion for new trial was made upon several grounds, one of which was insufficiency of the evidence to support the verdict. The evidence was conflicting. In such case the order of the district court will not be disturbed, unless its discretion has been abused, and no abuse has been shown.

It is ordered that the order of the district court allowing defendant a new trial be affirmed.

FITZGERALD, J.:   I concur.